UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| JASON VAUGHN, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 3:23-cv-1585 (VAB) |
| | : | |
| KRISTEN BARON, et al., | : | |
| *Defendants.* | : | |
| | : | |

**INITIAL REVIEW ORDER**

*Pro se* plaintiff, Jason Vaughn, currently incarcerated at MacDougall-Walker Correctional Institution, has filed a Complaint under 42 U.S.C. § 1983. He names Warden Kristen Baron, Correctional Officers Shanley, Cuervo, Doe 1, and Doe 2, and Lieutenant Doe 3 as defendants. Mr. Vaughn claims that the officers failed to protect him from assault by other inmates. He seeks damages only.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

Based on this initial review, all claims against Warden Baron are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The case will proceed against the remaining defendants in their individual capacities for the remaining claims of failure to protect and excessive force.

I.      **FACTUAL BACKGROUND**[1]

On April 21, 2022, Mr. Vaughn allegedly was assaulted by three inmates in the day recreation room. Complaint, ECF No. 1 ¶ 1. Shanley, Cuervo, Doe 1, and Doe 2 allegedly fastened the handcuffs on the three inmates so loosely that they were able to slip out of the handcuffs and allegedly use them to assault Mr. Vaughn about his head and face. *Id.* ¶¶ 1–2. Defendants Shanley, Cuervo, Doe 1, and Doe 2 allegedly stood by watching and did not intervene until Mr. Vaughn was bleeding. *Id.* ¶ 3.

Following the assault, Mr. Vaughn allegedly was sent to an outside hospital where he allegedly received four stitches. *Id.* ¶ 4. As a result of the assault, Mr. Vaughn allegedly suffers from headaches and a swollen left eye. *Id.* ¶ 5.

Following the incident, while Mr. Vaughn allegedly was handcuffed and in a prone position on the floor, Doe 3 allegedly sprayed him with a chemical agent, aggravating his asthma. *Id.* ¶¶ 7–8.

II.     **DISCUSSION**

Mr. Vaughn asserts claims for failure to protect against Defendants Shanley, Cuervo, Doe 1, and Doe 2; use of excessive force against Defendant Doe 3, and failure to train in the proper application of handcuffs against Defendant Baron.

Information on the Department of Correction website shows that Mr. Vaughn was sentenced on March 2, 2016 to a term of imprisonment of twenty-two years. *See* www.ctimnateinfo.state.ct.us/detailsupv.asp?id_inmt_num=292549. The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d

---

[1] For purposes of initial review, the Court considers all of the following allegations to be true.

Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). Thus, as Mr. Vaughn was a sentenced inmate at the time of the incident underlying this action, his claims are cognizable under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are brought under the Eighth Amendment while claims of pretrial detainees are brought under the Fourteenth Amendment).

A. The Eighth Amendment Failure to Protect Claim

To state an Eighth Amendment claim for deliberate indifference to safety or failure to protect from harm, the plaintiff must show confinement under conditions that posed a substantial risk of serious harm and that the defendants both knew that he faced a substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lewis v. Swicki*, 629 Fed. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *See Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019).

The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The defendant's actions must be more than merely negligent. The prison officials must have acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Mr. Vaughn alleges that Shanley, Cuervo, Doe 1, and Doe 2 orchestrated the assault by

fastening the handcuffs on the inmates so loosely they could easily slip out of the handcuffs and then watched the assault, waiting until Mr. Vaughn was bleeding to intercede. Deliberately exposing an inmate to assault is not a risk society chooses to tolerate. Indeed, prison officials have a duty to protect inmates from such assaults. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Further, accepting these allegations as true—as the Court must at this stage of the case—they are sufficient for purposes of alleging that these Defendants' actions were deliberate, not merely negligent. *See, e.g.*, *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) (reversing the district court's dismissal of the amended complaint and holding that a prison guard could exhibit deliberate indifference by standing by and allowing another inmate to attack the plaintiff); *Ayers v. Coughlin*, 780 F.2d 205, 209–10 (2d Cir. 1985) (reversing the district court's dismissal of a complaint and finding that a correctional officer's failure to respond to death threats made to the plaintiff by another inmate could constitute deliberate indifference, where the other inmate ended up severely injuring the plaintiff).

Accordingly, the failure to protect claims will proceed against Shanley, Cuervo, Doe 1, and Doe 2 will proceed, for now.

B. The Eighth Amendment Excessive Force Claim

To state a claim for use of excessive force in violation of the Eighth Amendment, the plaintiff must allege facts establishing subjective and objective components. *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate in light of contemporary standards of decency. The amount of harm required depends on the nature of the claim. *Id.* at 21. Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a

prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as a part of a 'good faith effort to maintain or restore discipline.'" *Id*. at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of an inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any effort made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).

Mr. Vaughn alleges that Doe 3 sprayed him with a chemical agent after Mr. Vaughn had been handcuffed and was on the floor in a prone position. As the incident had concluded and Mr. Vaughn was restrained, the use of the chemical agent arguably could have been malicious, rather that intended to restore order. Using a chemical agent against a compliant inmate is considered a use of excessive force. *See Hinton v. Pearson*, No. 3:21-cv-863 (MPS), 2021 WL 4521994, at *6 (D. Conn. Oct. 4, 2021) (citation omitted).

Accordingly, the claim for use of excessive force will proceed against Doe 3, for now.

C. The Supervisory Failure to Train Claim

The Second Circuit has held that "there is no special rule for supervisory liability"; "a plaintiff must plead and prove 'that each Government-official defendant, through the official's

5

own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal citation omitted). "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Id.* at 616–17 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009)). Instead, the plaintiff must identify "facts showing that each supervisor was aware that his or her actions would cause a substantial risk of harm and then disregarded that risk." *Crispin v. Peiri*, No. 3:21-cv-475 (KAD), 2023 WL 2931846, at *8 (D. Conn. Apr. 13, 2023). "Absent such allegations, the failure to supervise subordinates does not state a cognizable claim for supervisory liability." *Id.*

Mr. Vaughn claims that Warden Baron, a supervisory official, failed to properly train and supervise defendants Shanley, Cuervo, Doe 1, and Doe 2, in the application of handcuffs. Absent evidence of her personal involvement in the application of handcuffs on the three inmates who attached Mr. Vaughn, however, the failure to train or supervise does not state a cognizable claim for supervisory liability. *See Estate of King by and through King v. Annucci*, ___ F. Supp. 3d ___, 2023 WL 6122868, at *10 (N.D.N.Y. Sept. 19, 2023) (The Second Circuit previously recognized theory of supervisory liability based on gross negligence in supervising subordinates who committed unlawful acts, but that theory is no longer applicable); *Robinson v. Graham*, No. 9:20-CV-1610 (MAD/ML), 2021 WL 2358415, at *3 (N.D.N.Y. June 9, 2021) (dismissing a claim against a supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability' theory of liability for Section 1983 claims that is no longer available" after *Tangreti*); *Boyd v. Larregui*, No. 3:19-cv-579 (CSH), 2020 WL 5820491, at *7 (D. Conn. Sept. 30, 2020) (dismissing a claim for failure to train subordinates where the plaintiff failed to establish personal involvement of the supervisory defendant or "provide particular relevant deficiencies in training program").

Accordingly, the supervisory failure to train claim against Warden Baron will be dismissed under 28 U.S.C. § 1915A(b)(1).

### III. CONCLUSION

All claims against Warden Baron are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The case will proceed against the remaining Defendants in their individual capacities on the remaining claims of failure to protect and excessive force.

Before service can be effected on defendants Doe 1, Doe 2, and Doe 3, Mr. Vaughn must provide their names and current work addresses. He is directed to obtain this information through the discovery process and file a notice containing the identifying information. Once Mr. Vaughn provides this information, the Court will order service on Defendants Doe 1, Doe 2, and Doe 3.

The Court enters the following additional orders.

(1) **The Clerk of Court shall** contact the Department of Correction Office of Legal Affairs to determine a current service address for defendants Shanley and Cuervo, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided by **February 16, 2024**, and report to the Court on the status of the waiver request by **March 1, 2024**. If any Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on that Defendant in his individual capacity and the Defendant shall be required to pay the cost of such service.

(2) **The Clerk of Court shall** send the plaintiff a copy of this Order.

(3) **The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The Defendants shall file their response to the complaint, either an answer or motion to dismiss, by **May 1, 2024**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 4, 2024**. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed by **November 8, 2024**.

(7)     Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The Plaintiff must give notice of a new address even if he is incarcerated. The Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9)     The Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(10)    The Clerk of Court shall immediately enter the District of Connecticut Standing

Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

    SO ORDERED.

    Dated this 26th day of January 2024 at New Haven, Connecticut.

                                       /s/ Victor A. Bolden
                                       Victor A. Bolden
                                       United States District Judge